# 14-1414-cv

# United States Court of Appeals
## for the
## Second Circuit

WELLS FARGO BANK, N.A., as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Corp., Commercial Mortgage Pass-Through Certificates, Series 2002-CIBC4, acting by and through its Special Servicer, LNR Partners, LLC,

*Plaintiff-Appellant,*

– v. –

JPMORGAN CHASE BANK, N.A.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of New York (Cedarbaum, J.)

## BRIEF FOR DEFENDANT-APPELLEE

John G. Hutchinson
Benjamin R. Nagin
Eamon P. Joyce
Colin J. Garry
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Attorneys for Defendant-Appellee*
*JPMorgan Chase Bank, N.A.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, JPMorgan Chase Bank, N.A. discloses that it is a wholly owned subsidiary of JPMorgan Chase & Co.  JPMorgan Chase & Co. is a publicly traded corporation.  It has no parent company and no publicly held corporation owns ten percent (10%) or more of JPMorgan Chase & Co.'s shares.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES .................................................................... iv

COUNTERSTATEMENT OF THE ISSUE ............................................... 1

PRELIMINARY STATEMENT ....................................................... 1

STATEMENT OF THE CASE ......................................................... 3

      A.     Factual Background ............................................................ 3

            1.    The Highland Mall Loan .......................................... 3

            2.    The MLPA ........................................................... 4

      B.     Procedural History ........................................................... 7

SUMMARY OF ARGUMENT ....................................................... 10

STANDARD OF REVIEW .......................................................... 12

ARGUMENT ........................................................................... 13

I.     THE DISTRICT COURT CORRECTLY DISMISSED THE
      TRUST'S ACTION AS TIME-BARRED BY NEW YORK'S
      APPLICABLE SIX-YEAR STATUTE OF LIMITATIONS. ...................... 13

      A.     The District Court Properly Applied Black-Letter New York
            Law In Dismissing The Trust's Complaint As Untimely. ................. 14

      B.     The District Court Correctly Held That The Limitations Period
            Commenced When The Trust Had The Right To Make A
            Procedural Cure-or-Repurchase Demand Under The MLPA. ........... 16

            1.    The Cure-or-Repurchase Demand Provision Here Is
                Procedural, As The Court Below Recognized. ......................... 19

            2.    The MLPA's "Prompt Notice" And Cure Provisions
                Have No Bearing On The Limitations Period Applicable
                To The Trust's Underlying Breach Claim. ............................. 25

            3.    The Demand Provision Does Not Provide An
                Independent Basis For Relief. ........................................... 27

4.      The District Court Appropriately Adhered To The First
        Department's Decision in *ACE*.................................................30

        a.      Appellant Does Not And Cannot Point To
                Persuasive Evidence That The Court of Appeals
                Would Resolve The Question Presented Here
                Differently Than The First Department Has. .................32

        b.      The Trust's Attempt To Distinguish Other Cases
                Decided Consistently With *ACE* Is Unavailing. ............35

    C.  Appellant Is Mistaken In Arguing That, Even If The Demand
        Provision Is Procedural, It Did Not Have The Ability To Make
        A Demand Until 2009. .......................................................36

        1.      The District Court Properly Read The Complaint To
                Allege That Material And Adverse Effects Existed At
                The Time Of The Purported Misrepresentations. ....................37

        2.      Appellant Erroneously Argues That Its Claims Did Not
                Accrue Until Default.................................................43

        3.      Appellant's Additional Attacks On The District Court's
                Reasoning Are Unavailing.........................................46

II. THE TRUST WAIVED ITS "CONTINUING PERFORMANCE"
    ARGUMENT WHICH, IN ANY EVENT, IS WRONG. ...........................49

    A.  The Court Should Decline To Consider The "Continuing
        Performance" Claim Because The Trust Inexcusably Failed To
        Raise This Issue In The District Court.................................50

    B.  The MLPA Does Not Require "Continuing Performance." ..............51

CONCLUSION .....................................................................54

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF
        APPELLATE PROCEDURE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.*,
    120 F.3d 351 (2d Cir. 1997) ..........................................................................1, 14

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
    977 N.Y.S.2d 229 (1st Dep't 2013), *leave to appeal granted*,
    No. APL-2014-00156, 2014 WL 2891678 (N.Y. June 26, 2014) ...............passim

*Ace Secs. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC*
    *Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*,
    __F. Supp. 2d __, 2014 WL 1116758 (S.D.N.Y. Mar. 20, 2014) ..........25, 29, 49

*Bayridge Air Rights, Inc. v. Blitman Constr. Corp.*,
    80 N.Y.2d 777 (1992) ........................................................................................53

*Bogle-Assegai v. Connecticut*,
    470 F.3d 498 (2d Cir. 2006) .......................................................................50, 51

*Brooks v. AXA Advisors, LLC*,
    961 N.Y.S.2d 648 (4th Dep't 2013) ..................................................................45

*Bulova Watch Co. v. Celotex Corp.*,
    46 N.Y.2d 606 (1979) .............................................................................49, 51, 52

*Cantor Fitzgerald Inc. v. Lutnick*,
    313 F.3d 704 (2d Cir. 2002) .............................................................................12

*Casey v. Merck & Co.*,
    653 F.3d 95 (2d Cir. 2011) ...............................................................................12

*Chelsea Piers L.P. v. Hudson River Park Trust*,
    964 N.Y.S.2d 147 (1st Dep't 2013) ..................................................................45

*Christine Falls Corp. v. U.S. Bank Nat'l Ass'n*,
    546 F. App'x 13 (2d Cir. 2013) ........................................................................13

*Citigroup Mortg. Loan Trust 2007-AMC3 ex rel. U.S. Bank, Nat'l Ass'n v.*
    *Citigroup Global Markets Realty Corp.*,
    No. 13 Civ. 2843(GBD), 2014 WL 1329165 (S.D.N.Y. Mar. 31, 2014)...........29

*CitiMortgage, Inc. v. Reunion Mortg., Inc.*,
    No. 4:10CV1632 RWS, 2012 WL 5471165 (E.D. Mo. Nov. 9, 2012) .............24

*Consol. Energy Design Inc. v. Princeton Club of N.Y.*,
    No. 13 Civ. 8747(KBF), 2014 WL 1202946 (S.D.N.Y. Mar. 24, 2014) ...........18

*Cont'l Cas. Co. v. Stronghold Ins. Co.*,
    77 F.3d 16 (2d Cir. 1996) .................................................................................21

*Cornejo v. Bell*,
    592 F.3d 121 (2d Cir. 2010) ......................................................................12, 30

*Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 ex rel. HSBC Bank
    USA, Nat'l Ass'n v. DB Structured Prods., Inc.*,
    958 F. Supp. 2d 488 (S.D.N.Y. 2013) ..............................................................29

*Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Corp.*,
    No. 1:09-cv-01656 (RMC) (D.D.C. May 18, 2012)....................................41, 42

*DeWeerth v. Baldinger*,
    836 F.2d 103 (2d Cir. 1987) .............................................................................17

*Doe v. Guthrie Clinic, Ltd.*,
    710 F.3d 492 (2d Cir. 2013) .............................................................................32

*Elie Int'l, Inc. v. Macy's W. Inc.*,
    965 N.Y.S.2d 52 (1st Dep't 2013)....................................................................45

*Ely-Cruikshank Co. v. Bank of Montreal*,
    81 N.Y.2d 399 (1993) ..................................................................................1, 46

*Fed. Hous. Fin. Agency v. DB Structured Prods., Inc.*,
    No. 652978/2012, 2014 WL 1384489 (N.Y. Sup. Ct. Mar. 17, 2014)..............33

*Fed. Hous. Fin. Agency v. WMC Mortg.*,
    No. 13 Civ. 584 (AKH), slip op. (S.D.N.Y. Dec. 17, 2013) .............................33

*Fed. Hous. Fin. Agency v. WMC Mortg., LLC*,
    No. 13 Civ. 584 (AKH), slip op. (S.D.N.Y. June 2, 2014)) ..............................33

*Gander Mountain Co. v. Islip U-Slip LLC*,
    923 F. Supp. 2d 351 (N.D.N.Y. 2013), *aff'd*, __ F. App'x __,
    2014 WL 1284842 (2d Cir. Apr. 1, 2014)........................................................49

*Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*,
    18 N.Y.3d 765 (2012) ...................................................................................passim

*Haining Zhang v. Schlatter*,
    557 F. App'x 9 (2d Cir. 2014) ...........................................................................51

*Hoelzer v. City of Stamford*,
    722 F. Supp. 1106 (S.D.N.Y. 1989), *aff'd*, 933 F.2d 1131 (2d Cir. 1991) ........18

*Home Equity Asset Trust 2006-5 ex rel. U.S. Bank Nat'l Ass'n v. DLJ Mortg.
    Capital, Inc.*,
    984 N.Y.S.2d 632, 2014 WL 27961 (N.Y. Sup. Ct. Jan. 3, 2014) .....................33

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    298 F.R.D. 116 (S.D.N.Y. 2014) .......................................................................29

*Hudson v. Delta Kew Holding Corp.*,
    43 Misc.3d 1223(A), 2014 WL 1924324 (N.Y. Sup. Ct. Apr. 22, 2014)...........54

*Hurlbut v. Christiano*,
    405 N.Y.S.2d 871 (4th Dep't 1978) ...................................................................53

*In re Bennett Funding Grp.*,
    292 B.R. 476 (N.D.N.Y. 2003).........................................................................22

*In re Nortel Networks Corp. Sec. Litig.*,
    539 F.3d 129 (2d Cir. 2008) .............................................................................50

*Jackson v. Eddy's LI RV Ctr., Inc.*,
    845 F. Supp. 2d 523 (E.D.N.Y. 2012) ...............................................................53

*John J. Kassner & Co. v. City of N.Y.*,
    46 N.Y.2d 544 (1979).......................................................................................42

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007) .............................................................................41

*Kunstsammlungen Zu Weimar v. Elicofon*,
    678 F.2d 1150 (2d Cir. 1982) .............................................................17, 18, 19

*LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*,
    237 F. Supp. 2d 618 (D. Md. 2002)...................................................................24

*Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*,
    793 F. Supp. 2d 1189 (W.D. Wash. 2011) .........................................................33

*Lehman Bros. Holdings, Inc. v. Key Fin. Corp.*,
    No. 8:09-CV-623-T-17EAJ,
    2011 WL 1296731 (M.D. Fla. Mar. 31, 2011) ...................................................24

*Lehman Bros. Holdings, Inc. v. Nat'l Bank of Ark.*,
    875 F. Supp. 2d 911 (E.D. Ark. 2012).................................................................24

*Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v.*
    *GreenPoint Mortg. Funding, Inc.*,
    __ F. Supp. 2d __, 2014 WL 108523 (S.D.N.Y. Jan. 10, 2014),
    *appeal pending*, No. 14-0399 (2d Cir. filed July 8, 2013) ........................passim

*Lord Day & Lord v. Socialist Republic of Vietnam*,
    134 F. Supp. 2d 549 (S.D.N.Y. 2001) .................................................................22

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
    963 N.Y.S.2d 21 (1st Dep't 2013).......................................................................40

*Metro. Life. Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    84 N.Y.2d 430 (1994) .........................................................................................30

*Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 ex rel.*
    *HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital, Inc.*,
    971 N.Y.S.2d 73, 2013 WL 2072817 (N.Y. Sup. Ct. May 10, 2013).........passim

*Odom v. Doar*,
    497 F. App'x 88 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2864 (2013) ..............51

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
    462 F.3d 87 (2d Cir. 2006) .................................................................................42

*Pahuta v. Massey-Ferguson, Inc.*,
    170 F.3d 125 (2d Cir. 1999) ...................................................................31, 32, 35

*Pope v. Enzo Biochem, Inc.*,
    432 F. App'x 7 (2d Cir. 2011) ............................................................................51

*Resolution Trust Corp. v. Key Fin. Servs., Inc.*,
    280 F.3d 12 (1st Cir. 2002)..................................................................................24

*Robb v. Low*,
   952 N.Y.S.2d 872 (1st Dep't 2012) ...................................................21

*Rosen v. Spanierman*,
   894 F.2d 28 (2d Cir. 1990) ............................................................53

*Rosenblatt v. Christie*,
   195 F. App'x 11 (2d Cir. 2006) ......................................................14

*Rossi v. Oristian*,
   376 N.Y.S.2d 295 (4th Dep't 1975) ...............................................22

*Russack v. Weinstein*,
   737 N.Y.S.2d 638 (2d Dep't 2002)..................................................22

*Schoenefeld v. New York*,
   748 F.3d 464 (2d Cir. 2014) ...........................................................12

*Singh v. Wells*,
   445 F. App'x 373 (2d Cir. 2011) ....................................................13

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) ...........................................................12

*Solomon R. Guggenheim Found. v. Lubell*,
   77 N.Y.2d 311 (1991)......................................................................18

*St. George Hotel Assocs. v. Shurkin*,
   786 N.Y.S.2d 56 (2d Dep't 2004)....................................................45

*St. Patrick's Home for Aged & Infirm v. Laticrete Intern., Inc.*,
   696 N.Y.S.2d 117 (1st Dep't 1999)..................................................52

*Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*,
   No. 02 Civ. 3232(SHS), 2003 WL 548868 (S.D.N.Y. Feb. 25, 2003)........passim

*Sutton v. Burdick*,
   906 N.Y.S.2d 634 (3d Dep't 2010)..................................................21

*T & N PLC v. Fred S. James & Co. of N.Y., Inc.*,
   29 F.3d 57 (2d Cir. 1994) ................................................44, 46, 53

*United States v. Glenn Gardens Assocs., L.P.*,
   534 F. App'x 17 (2d Cir. 2013) ....................................................31, 33

*W. 90th Owners Corp. v. Schlechter*,
   525 N.Y.S.2d 33 (1st Dep't 1988) ..............................................14, 49

*Wells Fargo Bank, N.A. v. Bank of Am., N.A.*,
   No. 10 Civ. 9584(JPO), 2013 WL 1285289 (S.D.N.Y. Mar. 28, 2013)............40

*Westminster Props., Ltd. v. Kass*,
   624 N.Y.S.2d 738 (1st Dep't 1995) ..................................................25

*Woodlaurel, Inc. v. Wittman*,
   606 N.Y.S.2d 39 (2d Dep't 1993) .....................................................17

**STATUTES & REGULATIONS**

N.Y. CPLR § 206(a) ......................................................................passim

N.Y. CPLR § 213(2) .....................................................................1, 13

N.Y. Gen. Oblig. Law § 17-103.....................................................43, 54

**RULES**

Fed. R. Civ. P. 12(b)(6)...............................................................7, 12, 13

**COURT DOCUMENTS**

Compl. Ex. A, *ACE Sec. Corp. v. DB Structured Prods., Inc.*,
   No. 650980/2012 (N.Y. Sup. Ct. 2012), *available at*
   https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentI
   d=NzeV/oZCpal17VtRBqO1Xg==&system=prod ...........................................30

**OTHER AUTHORITIES**

N.Y. CPLR § 206(a), practice cmt. C206:1 (1996) ...........................................17, 18

## COUNTERSTATEMENT OF THE ISSUE

Whether the District Court properly dismissed under New York's six-year statute of limitations Appellant's breach of contract claim, which accrued in 2002, because Appellant did not file suit until 2012.

## PRELIMINARY STATEMENT

Under black letter New York statute of limitations law, a claim for breach of contractual representations and warranties accrues upon the date of the alleged breach and expires six years later, irrespective of when, or if, the alleged breach was discovered or when any resulting injury or damages purportedly were incurred.  *See* N.Y. CPLR § 213(2); *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 401–02 (1993).  It is equally well-established in New York that where a contractual demand provision is implicated, the statute of limitations begins to run when the right to make the demand is complete, and not when the right is discovered, or when the demand is in fact made or refused.  *See* N.Y. CPLR § 206(a); *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 771 (2012).

Applying these principles, the District Court properly held that New York's six-year statute of limitations barred the breach of contract action Wells Fargo Bank, N.A., as Trustee for the registered holders of J.P. Morgan Chase

Commercial Mortgage Corp., Commercial Mortgage Pass-Through Certificates, Series 2002-CIBC4, acting by and through its Special Servicer, LNR Partners, LLC ("the Trust" or "Appellant"), filed against JPMorgan Chase Bank, N.A. ("JPM").  *See* JA-108–21.

As the District Court correctly recognized, the Complaint, which was filed in 2012, was untimely because it alleges that JPM breached the parties' operative agreements by purportedly making untrue representations and warranties when those agreements were formed in *2002*.  *See* JA-113–19.  For instance, the Trust expressly pleaded that "*[JPM's] Representation and Warranty in the MLPA . . . Was Untrue*," JA-18 (emphasis in original), because JPM purportedly misrepresented facts that existed "*[a]t the time of loan origination*," *i.e.*, even *before* the agreements' 2002 execution, JA-9 ¶ 1 (emphasis in original); *see* JA-15 ¶¶ 28–30 (similar).  Likewise, the Complaint stated that JPM's alleged breaches, including a "fatal flaw at origination," JA-21 ¶ 63, which was both "incapable of performance" and "impossible to satisfy," JA-20–21 ¶ 61, "*had a significant negative effect on . . . the Leased Property*," JA-16 ¶ 36 (emphasis added).  Accordingly, the court found that because "the [C]omplaint includes numerous instances that show that the problems [the Trust] now complains of existed no later than 2002," JA-113, and thus that the Trust "could have demanded repurchase as

early as the 2002 closing date of the [operative agreements]," JA-119, its claim expired in 2008.  JA-115.

In dismissing the Trust's claims, the District Court faithfully applied the above-noted New York law principles, *see*, *e.g.*, JA-112–13, 116–17, and did so consistent with a recent holding in this context (*i.e.*, alleged breaches of a mortgage loan purchase agreement) by the First Department of the New York Supreme Court, Appellate Division, JA-116–17.

The District Court's thoughtful, thorough judgment should be affirmed.

## STATEMENT OF THE CASE

### A. Factual Background

#### 1. The Highland Mall Loan

In June 2001, JPM (successor to Morgan Guaranty Trust Company of New York) originated and extended a $71 million loan (the "Highland Mall Loan") to the Highland Mall Limited Partnership ("HMLP").  JA-12 ¶¶ 13–16.  HMLP was the lessee of property on which a regional shopping mall known as the Highland Mall was located (the "Leased Property"), and HMLP leased the Leased Property under an agreement dated November 29, 1979 (the "Ground Lease").  *Id.*  The Complaint further alleged that, in connection with the Highland Mall Loan, JPM was granted a security interest in, *inter alia*, the Ground Lease, via a Leasehold Deed of Trust and Security Agreement (the "Mortgage"), dated June 28, 2001.  JA-13 ¶ 20.  According to the Complaint, the Ground Lease "constitutes a portion of

the Highland Mall" but specifically excludes three of "the Mall's Anchor Stores." JA-12 ¶ 14; *see also* JA-47–48 (contract).

The Trust also alleged that the Ground Lease was amended in June 2001 to include Section 5.06(a), "which requires the Lessee to operate the Leased Property at all times in accordance with prevailing standards for 'first class regional shopping malls located in the United States of America (or where so stated, in Austin, Texas).'" JA-13 ¶ 17; *see also* JA-52 (quoting Section 5.06(a)). The Trust claims that this alleged "[r]estriction" (the so-called "First Class Mall Restriction") "is not tied to the retail operating covenants of the Anchor Stores." JA-13 ¶ 18. Rather, according to the Trust, the Anchor Stores are governed by a Restated Operating Agreement dated September 2, 1978, and pursuant to that Operating Agreement, as of "August 2001, no Anchor Store owner has had any obligation to use its respective property as a retail store." *Id.* ¶ 21.

### 2. The MLPA

The Trust's Complaint alleged that on April 29, 2002, pursuant to a Mortgage Loan Purchase Agreement (the "MLPA"), JPM sold its interest in the Highland Mall Loan to J.P. Morgan Chase Commercial Mortgage Securities Corp., which deposited the loan into the JPMCC Commercial Pass-Through Series 2002-CIBC4 Trust and, in relevant part, assigned its rights under the MLPA to Appellant. JA-14–15 ¶¶ 25, 31; *see* JA-35–49 (MLPA excerpts). The Highland

Mall Loan is administered under the terms of a Pooling and Servicing Agreement

(the "PSA"), which also was executed on April 29, 2002. JA-15 ¶ 32; *see* JA-29–

34 (PSA excerpts).

According to the Complaint, in the April 29, 2002 MLPA, JPM represented

and warranted, *inter alia*, "that the Ground Lease did not restrict the use of the

Leased Property in a manner that would materially and adversely affect the

security provided by the Mortgage," JA-14 ¶ 27, and that JPM "originated the

Highland Mall Loan in accordance with its underwriting standards," JA-15 ¶ 28;

*see* JA-20 ¶ 59 (similar) (quoting JA-49 ¶ (xxv)).  The Trust alleged that, by virtue

of the terms in the Ground Lease and Operating Agreement, these "representations

and warranties made by [JPM] were untrue" when made. JA-15 ¶ 29; *see also* JA-

18 ("***[JPM's] Representation and Warranty in the MLPA Regarding the Ground***

***Lease Was Untrue***") (emphasis in original); JA-19 ¶ 52 ("[JPM's] representation

and warranty in Section (xx)(l) of Exhibit B to the MLPA [JA-47–48 ¶ (xx)(1)]

was untrue").  As the Trust summarized its claims before the District Court:  "(*as*

*is alleged in the Complaint*), . . . contrary to [JPM's] representation in Section

(xx)(1), the Ground Lease did in fact contain a use restriction, namely, the First

Class Mall Restriction, *that materially and adversely affected the Leased*

*Property*." Dkt. 23 (MTD Opp.) at 7 (citing JA-18–20 ¶¶ 48–58; JA-51–55) (emphasis added).[1]

On December 23, 2010, the Trust "demanded that [JPM] repurchase the Highland Mall Loan because [JPM's] representations and warranties regarding the Ground Lease and its origination practices were untrue." JA-17 ¶ 46. Specifically, the Trust alleged that those representations and warranties were untrue when made in 2002 because the Ground Lease included the First Class Mall Restriction "***[a]t the time of loan origination***," JA-9 ¶ 1 (emphasis in original), and because JPM "originated a Loan that gave the initial assignee of the Loan no ability to control compliance with the conditions of its collateral at any point dating from August 2001," *id.* ¶ 2, when the other Anchor Store tenants of property not leased to HMLP were allegedly free from any obligation to use their property as retail stores. The Trust asserted that these purported infirmities, all inherent in the loan at the time of the MLPA's April 29, 2002 execution, "have had a material and adverse impact on the value of the Highland Mall Loan and the interests of the Trust's Certificateholders," as required by Section 2.03(b) of the PSA. JA-22 ¶ 71; *see also* JA-16 ¶ 36 (similar).[2]

---

[1] Record materials not reproduced in the Joint Appendix are cited herein by their ECF docket entry numbers ("Dkt.") in case 1:12-cv-06168-MGC (S.D.N.Y.).

[2] The Trust's 2010 demand letter also unequivocally asserted that the alleged material and adverse effect on the security provided by the Mortgage was sustained at the time of the MLPA due to the Ground Lease's allegedly unfavorable

In response to the Trust's December 23, 2010 demand, JPM "denied that it breached any representation and warranty and refused to repurchase the Highland Mall Loan."  JA-18 ¶ 47.

### B. Procedural History

On August 10, 2012, nearly ten and a half years after JPM had allegedly breached the April 29, 2002 MLPA's representations and warranties, the Trust filed this breach of contract action seeking damages from JPM based upon those purportedly untrue statements in the MLPA.  *See* JA-23 ¶ 72.

Because the Trust complained of purported conditions in existence in 2002 that, if true, necessarily would have enabled the Trust immediately to make a cure or repurchase demand for the alleged breach (*see supra* at 5–6; *infra* § I.C), JPM moved pursuant to Rule 12(b)(6) to dismiss the Trust's Complaint under New York's governing six-year statute of limitations.

During the pendency of JPM's motion, numerous other New York state and federal courts also were analyzing limitations-based motions to dismiss in actions against loan sellers alleging breaches of mortgage loan purchase agreements.  Most prominently, in a case that Appellant told the District Court "bears directly on" the

provisions.  *See* JA-53–55.  The letter asserted:  "Section 5.06(a) of the Ground Lease clearly is a restriction on the use of the Mortgaged Property by the lessee, which has materially and adversely affected the security provided by the Mortgage because, among other reasons, Section 5.06(a) restricts the Special Servicer's ability to sell the Mortgaged Property following foreclosure and severely limits the Special Servicer's workout options."  JA-53.

7

dismissal Motion granted by the District Court and "squarely addresses the identical statute of limitations issue that is pending" here,[3] the First Department unanimously reversed the denial of a motion to dismiss MLPA breach claims as untimely, holding that "[t]he motion court erred in finding that plaintiff's claims did not accrue until defendant either failed to timely cure or repurchase a defective mortgage loan . . . .  To the contrary, *the claims accrued on the closing date of the MLPA . . . when any breach of the representations and warranties contained therein occurred*."  *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 977 N.Y.S.2d 229, 231 (1st Dep't 2013) (emphasis added) (citing, *inter alia*, *Ely-Cruikshank*, 81 N.Y.2d at 402), *leave to appeal granted*, No. APL-2014-00156, 2014 WL 2891678 (N.Y. June 26, 2014) ("*ACE*").[4]

On March 27, 2014, the District Court dismissed with prejudice the Trust's Complaint as untimely.  JA-108–21.  Relying both on general well-established New York limitations principles, as well as their most recent application by the First Department in *ACE*, the District Court held that:  (i) the Trust's Complaint plainly alleges conduct constituting breach (including a purported material and adverse effect) as of 2002; (ii) the Trust therefore had the right to demand that JPM

---

[3] Dkt. 31, Ex. 3 at 1 (May 15, 2013 Ltr. to Judge Cedarbaum from G. Cross).

[4] The Court of Appeals' resolution of *ACE* may bear on this Court's dispositions of this action and *Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat. Ass'n v. GreenPoint Mortg. Funding, Inc.*, No. 14-0399 (2d Cir. filed July 8, 2013), in which the district court also relied on the First Department's holding.

cure or repurchase the loan in 2002, but did not; and (iii) the Trust's claim

therefore is time-barred—by over four years. *Id.*[5]

The District Court found that the Trust's "[C]omplaint includes numerous

instances that show that the problems [the Trust] now complains of existed no later

than 2002," *i.e.*, "at the time of origination and at the time the MLPA was

executed," JA-113–14, and, accordingly, that the Trust's "claim, brought in 2012,

therefore falls outside New York's six-year statute of limitations," JA-115; *see*

*also* JA-119 ("[The Trust] could have demanded repurchase as early as the 2002

closing date of the MLPA, so that is the date that controls for statute-of-limitations

purposes.").

More specifically, the District Court rejected the Trust's argument "that the

cause of action accrued not upon [JPM's] initial breach but rather upon [JPM's]

refusal in 2010 to honor the repurchase demand," because "[t]he demand at issue

here is not a substantive element of the underlying claim for breach but merely a

procedural prerequisite to suit."  JA-115–16.  Therefore, under established New

York law, "the statute of limitations began running when [the Trust] first could

---

[5] *Accord Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, __ F. Supp. 2d __, 2014 WL 108523, at *4 (S.D.N.Y. Jan. 10, 2014) (following *ACE* and holding that a breach claim was time-barred because it accrued "when [defendant] allegedly made untrue Representations regarding the quality and characteristics of the Loans, sold the Loans and entered into the [MLPA] with [plaintiff]"), *appeal pending*, No. 14-0399 (2d Cir. filed July 8, 2013); *see supra* at 8 n.4.

have made its demand." JA-115–16. The District Court likewise rejected the Trust's argument "that no material and adverse effect [] was present until default [on the Ground Lease] occurred in 2009," such that the Trust "was unable to make a demand until it incurred a financial loss resulting from [JPM's alleged] breach." JA-117–18. The court did so because the Trust alleged misrepresentations and other conditions existing at the time of the MLPA which, if true, "*did* 'materially and adversely affect' the value of the property" in 2002. *Id.* (emphasis added). Judge Cedarbaum emphasized: "[j]ust as demand provisions cannot indefinitely extend the statute of limitations, they likewise may not be construed to circumvent New York's well established accrual-at-breach rule." JA-119.

The Trust timely appealed. JA-123–25.

## SUMMARY OF ARGUMENT

I. The District Court correctly concluded that the Trust's breach of contract action is time-barred under the six-year statute of limitations. The District Court properly determined that the cure-or-repurchase demand provision here is merely a procedural prerequisite to the Trust's action, such that any claim for breach accrued when the Trust had a right to demand that JPM cure or repurchase. Appellant incorrectly argues that the "prompt notice" and cure-opportunity pieces of the remedial protocol indefinitely toll the limitations period for alleged breaches of JPM's 2002 representations and warranties. Doing so would effectively impose

10

a discovery rule on the statute of limitations for these alleged contractual breaches, which is the antithesis of New York law.  Moreover, it is settled New York law that a contractual remedy provision (here, the cure-or-repurchase demand protocol) does not provide an independent basis for liability, separate from an underlying claim for breach to trigger the demand.  Here, Appellant's underlying claim for breach of representations is time-barred.  The Complaint plainly alleges that the type of material and adverse effect sufficient to trigger the demand right existed when JPM made the alleged misrepresentations—in 2002.  Appellant's attempts to rewrite the Complaint to avoid dismissal are unavailing.

Further, in dismissing the Trust's Complaint, the District Court appropriately relied upon a series of decisions by the New York Court of Appeals, as well as the most recent pronouncement of the law in this specific context by the First Department in *ACE*.  Appellant's attempts to distinguish the relevant precedents from the Court of Appeals, as well as *ACE* and other substantively similar cases, are at best mistaken and, as to *ACE*, directly at odds with the position Appellant took before the District Court.  Moreover, the Trust's arguments expose that Appellant is effectively advocating for a discovery rule, or an accrual-at-injury rule, both of which New York law forbids.

II.  Appellant's assertion that that remedy provision obligated JPM to "continuing performance" is meritless, and, in any event, the Trust waived that argument by failing to raise it below.

In sum, the Court should affirm the District Court's judgment.

## STANDARD OF REVIEW

This Court reviews *de novo* the dismissal of a complaint under Rule 12(b)(6), *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010), and the application of a statute of limitations, *Casey v. Merck & Co.*, 653 F.3d 95, 99 (2d Cir. 2011).

Further, "it is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002).  In applying state law, this Court repeatedly has held that is "bound 'to apply the law as interpreted by New York's intermediate appellate courts . . . unless [it] find[s] persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion.'"  *E.g.*, *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010) (citation omitted).[6]

---

[6] *See also*, *e.g.*, *Schoenefeld v. New York*, 748 F.3d 464, 469 (2d Cir. 2014) ("[T]he absence of authority from New York's highest court does not provide us license to disregard lower court rulings nor to analyze the question as though we were presented with a blank slate.").

Appellant necessarily acknowledges that in order to survive dismissal, its Complaint must "'state a claim to relief that is plausible on its face.'"  Appellant's Br. 19 ("Br.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But the Complaint fails that standard because it (along with documents it references) demonstrates, "on its face," that the Trust's breach of contract claim is barred by New York's six-year statute of limitations.  Accordingly, the District Court properly dismissed the Complaint.  *See*, *e.g.*, *Christine Falls Corp. v. U.S. Bank Nat'l Ass'n*, 546 F. App'x 13, 15–16 (2d Cir. 2013) (affirming Rule 12(b)(6) dismissal of breach of contract claim where, as here, complaint facially showed that claim was untimely); *accord Singh v. Wells*, 445 F. App'x 373, 377 (2d Cir. 2011) (even "[t]aking plaintiffs' allegations as true," it was "implausible" that claims were timely).

## ARGUMENT

### I.    THE DISTRICT COURT CORRECTLY DISMISSED THE TRUST'S ACTION AS TIME-BARRED BY NEW YORK'S APPLICABLE SIX-YEAR STATUTE OF LIMITATIONS.

The District Court properly concluded that the Trust's breach of contract claim is untimely under New York law, because the claim accrued in 2002 when, as alleged in the Complaint, JPM breached representations and warranties in the MLPA.  N.Y. CPLR § 213(2); JA-113–15.

13

### A. The District Court Properly Applied Black-Letter New York Law In Dismissing The Trust's Complaint As Untimely.

As the District Court recognized (*see* JA-113), "in New York it is well settled that the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered," and not from the date injury from the breach allegedly was sustained. *ABB Indus.*, 120 F.3d at 360 (citing, *inter alia*, *Ely-Cruikshank*, 81 N.Y.2d at 402–03); *see*, *e.g.*, *Rosenblatt v. Christie*, 195 F. App'x 11, 13 (2d Cir. 2006) ("'neither knowledge of the breach [of contract] nor cognizable damages are required to start the statute of limitations running at breach'") (citation omitted); *W. 90th Owners Corp. v. Schlechter*, 525 N.Y.S.2d 33, 35–36 (1st Dep't 1988) (affirming dismissal of contract claims as time-barred because the "representation . . . was false when made" and "[t]hus, the breach occurred at the time of the execution of the contract").

The District Court likewise acknowledged (*see* JA-115) that the New York Court of Appeals has held that where a contractual demand provision is implicated, as here, "'[t]he Statute of Limitations begins to run when the right to make the demand . . . is complete.'" *Hahn*, 18 N.Y.3d at 771 (citation omitted); *see also* JA-115 (recognizing "[t]he New York statutes essentially codify this rule," and quoting N.Y. CPLR § 206(a), which states "the time within which the action must be commenced shall be computed from the time when the right to make the

14

demand is complete"); *Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02 Civ. 3232(SHS), 2003 WL 548868, at *2 (S.D.N.Y. Feb. 25, 2003) ("the right to make that demand that the Trustee sue for breach of contract is complete 'when the wrong is committed'") (quoting 7B Joseph McLaughlin, Practice Commentaries, N.Y. CPLR § 206 (McKinney's 1990)).  As the District Court correctly explained, "[t]his rule prevents a plaintiff from indefinitely extending the statute of limitations by waiting to make a demand."  JA-115 (citing *Hahn*).

Critically, the District Court held that, based on the Complaint's allegations, those two points—breach, and the right to make a demand—converge here, at or near the execution of the MLPA in 2002.  *See* JA-116–17.  It correctly did so because the Trust alleged, *inter alia*, that:  (i) the addition of the First Class Mall Restriction to the Ground Lease "*[a]t the time of loan origination*" in 2002 made it "incapable of cure," JA-9 ¶ 1 (emphasis in original); (ii) JPM "originated a Loan that gave the initial assignee of the Loan no ability to control compliance with the conditions of its collateral at any point *dating from August 2001*," *id.* ¶ 2 (emphasis added); and (iii) the First Class Mall Restriction constituted a "fatal flaw at origination," JA-21 ¶ 63, that was both "incapable of performance" and "impossible to satisfy," JA-20–21 ¶ 61.  Indeed, the Trust alleged that the "cessation of the requirement that the Anchor Stores operate as retail stores"— which occurred "just two months after loan origination," in August 2001 (JA-9

¶ 2)—"*had a significant negative effect on the retail occupancy of the Leased Property.*" JA-16 ¶ 36 (emphasis added). Thus, the District Court explained that "the statute of limitations began running when [the Trust] first could have made its demand," and its "'claims accrued on the closing date of the MLPA, . . . when any breach of the representations and warranties contained therein occurred,'" and demand could have been made. JA-116–17 (quoting *ACE*, 977 N.Y.S.2d at 231).

### B. The District Court Correctly Held That The Limitations Period Commenced When The Trust Had The Right To Make A Procedural Cure-or-Repurchase Demand Under The MLPA.

The District Court correctly held that the MLPA's cure-or-repurchase remedy provision "is not a substantive element of the underlying claim for breach but merely a procedural prerequisite to suit," and therefore that the Trust's claim is subject to "the general rule in New York," codified in CPLR § 206(a), "that 'the cause of action accrues when the party making the claim possesses a legal right' to make the demand, not when the demand actually occurs." JA-115 (quoting *Hahn*, 18 N.Y.3d at 770). As Judge Cedarbaum explained, "'[t]he cause of action'—misrepresentations in the MLPA—'existed and the defendant's conduct giving rise to the claim'"—JPM's alleged breaches of representations and warranties—"'was complete before the demand was made.'" JA-116 (quoting *Hoelzer v. City of Stamford*, 722 F. Supp. 1106, 1113 n.34 (S.D.N.Y. 1989), *aff'd*, 933 F.2d 1131 (2d Cir. 1991)).

This Court has recognized that CPLR § 206(a) applies "where the demand requirement is a procedural as opposed to a substantive element of the cause of action." *DeWeerth v. Baldinger*, 836 F.2d 103, 106–07 n.3 (2d Cir. 1987).  A demand is procedural where, as here, it "is merely a prerequisite to commencement of an action in which a right to relief already exists, as, for example, the requirement that shareholders make a demand on the board of directors before commencing a derivative action."  N.Y. CPLR § 206(a), practice cmt. C206:1 (1996).  "[I]n such procedural demand situations," as here, a "refusal of the demand is not the event that triggers the running of the statute of limitations; the period runs from the 'time when the right to make the demand is complete.'"  *Id.*  Even where a plaintiff is required to make a formal demand for payment or repurchase, the limitations period runs from when the party "had the right to demand payment, not when it actually made the demand."  *Hahn*, 18 N.Y.3d at 771.  Likewise, this Court has recognized that "where the demand is merely procedural, that is, where demand and refusal are not requisite elements of the cause of action and *the defendant's actionable conduct was complete prior to demand*, [CPLR § 206(a)] governs and the limitation period begins to run when the 'right to make the demand is complete.'"  *Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1161 (2d Cir. 1982).[7]

---

[7] *See*, *e.g.*, *Woodlaurel, Inc. v. Wittman*, 606 N.Y.S.2d 39, 39–41 (2d Dep't 1993)

17

By contrast, a demand obligation is substantive only "where a demand and refusal are requisite elements of the cause of action." *Id.* Substantive demands are found only in cases such as "bailment" disputes, where the bailee is not liable as a tortfeasor until demand is made and refused for return of chattel, or replevin cases against good-faith purchasers of chattels where the "good-faith purchaser has done no wrong until demand for return is refused." N.Y. CPLR § 206(a), practice cmt. C206:1 (1996). Cases involving the recovery of stolen artwork are illustrative, because "New York case law has long protected the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value." *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 317 (1991) (*cited at* JA-116). Thus, in such cases (and unlike here), "[u]ntil demand is made and refused, possession of the stolen property by the good-faith purchaser for value is not considered wrongful." *Id.* at 318 (collecting cases). In these rare circumstances in which a substantive demand obligation is

---

(same) (collecting cases); *Hoelzer*, 722 F. Supp. at 1113 n.34 (CPLR § 206(a) "applies to demands that are procedural," but not, as in *Hoelzer* and unlike here, "where, as in the case of a good faith purchaser or a bailee, a demand is substantive, or in other words where a demand is an element of the plaintiff's *prima facie* case"); *Consol. Energy Design Inc. v. Princeton Club of N.Y.*, No. 13 Civ. 8747(KBF), 2014 WL 1202946, at *2–3 (S.D.N.Y. Mar. 24, 2014) (similar).

18

implicated, "the statute of limitation begins to run only after such demand and refusal." *Kunstsammlungen*, 678 F.2d at 1161.[8]

### 1. The Cure-or-Repurchase Demand Provision Here Is Procedural, As The Court Below Recognized.

The express language of the MLPA and PSA here confirms that the cure-or-repurchase demand provision "is merely procedural." *Id.* The MLPA's remedy protocol is only implicated after alleged actionable conduct by JPM that *already* has occurred and constitutes a breach of a representation or warranty. Specifically, in conjunction with Section 2.03 of the PSA (JA-31–32), Section 6 of the MLPA provides simply that JPM's obligation to cure or repurchase "constitute[s] the sole remedy available to [the Trust] in connection with a *breach of any of [JPM's] representations or warranties*." JA-42 § 6(g) (emphasis added); *accord id.* (referencing the required "prompt[] notif[ication] . . . of any breach *of a representation or warranty*") (emphasis added). Put simply, under the contract, the breach is complete when the representation or warranty has been violated, not upon the denial of a repurchase demand. Indeed, the PSA explicitly defines "a 'Breach'" as "a breach *of any representation or warranty* with respect to a

---

[8] *Kunstsammlungen*, on which Appellant primarily relies in discussing the substantive demand standard (*see* Br. 26), concerned an attempt to recover stolen artwork. 678 F.2d at 1160–64; *see id.* at 1162 ("Indeed, the very notion of a substantive demand requirement is that, despite having a right to the property, the true owner must nevertheless demand its return and be refused before he has a cause of action at all against the refuser.").

Mortgage Loan set forth in, or required to be made with respect to, a Mortgage

Loan by the applicable Mortgage Loan Seller pursuant to the related [MLPA]."

JA-32 § 2.03(b) (emphasis added).

     The Trust's allegations repeatedly confirm that JPM's assertedly actionable

conduct was complete at the time of the alleged breach in 2002,[9] when its

representations were made.  *See*, *e.g.*, JA-14–15 ¶¶ 27–29; JA-18–19 ¶¶ 51–52;

JA-20–21 ¶¶ 59–62; *infra* at 37–40 (collecting allegations).  Indeed, the Trust's

Complaint does not (and cannot) attribute *any conduct* to JPM between 2002 and

2010 (*see* JA-15–17 ¶¶ 33–46), but the Trust did not make its untimely demand

and breach claim until 2010 (JA-17 ¶ 46).  Accordingly, the District Court

appropriately determined that because "'[t]he cause of action'—misrepresentations

in the MLPA—'existed and the defendant's conduct giving rise to the claim was

complete before the demand was made,'" JA-116 (citation omitted) (citing, *inter*

*alia*, *Hahn*, 18 N.Y.3d at 770), "[t]he general rule of [CPLR § 206(a)] therefore

---

[9] JPM disputes that any breach occurred, and consequently that any material and adverse effect caused by such alleged breach has occurred.  However, the Trust certainly has *alleged* both a breach and the requisite material and adverse effect at the time of the MLPA in 2002, and these allegations control for purposes of assessing the timeliness of this action.  The assertion that JPM cannot demonstrate that claims it believes are meritless in fact are also time-barred (Br. 41 n.20) as pleaded is clearly wrong.

applies, and the statute of limitations began running when [the Trust] first could have made its demand," *id.* (citing *ACE*, 977 N.Y.S.2d at 231).[10]

On appeal, the Trust asserts that the contract's demand provision was substantive. Appellant relies on this Court's decision in *Continental Casualty Co. v. Stronghold Insurance Co.*, 77 F.3d 16 (2d Cir. 1996), which held that claims under reinsurance policies did not accrue until the insured gave notice of the covered loss, because the reinsurer could not have breached the contract until it refused to pay after receiving notice. *Id.* at 20. The Trust is wrong in contending that *Continental Casualty* is "on all fours." Br. 17–18. To the contrary, *Continental Casualty* is cabined to reinsurance cases, in which an insurer's losses are not "due and payable until a reasonable period of time [has] elapsed after it [gives] notice of them." 77 F.3d at 20–21; *see* Br. 45 (acknowledging that "[t]he instant case does not involve an insurance company or insurance policy"). That is, in reinsurance treaties, there is *no* breach whatsoever until a payment demand is refused. Indeed, New York's Court of Appeals has refused to apply *Continental Casualty* beyond the reinsurance context. *Hahn*, 18 N.Y.3d at 772 n.5 (holding that the dissent's reliance on *Continental Casualty* was "misplaced" given the

---

[10] *Accord*, *e.g.*, *Robb v. Low*, 952 N.Y.S.2d 872, 873 (1st Dep't 2012) (affirming dismissal of contract claims as time-barred where, like here, "plaintiff's claim accrued at the time he could have demanded repayment, *i.e.*, when defendant breached the contract"); *Sutton v. Burdick*, 906 N.Y.S.2d 634, 636 (3d Dep't 2010) (same, where "the claim for [breach] was not asserted for more than 12 years after the closing").

unique relationship at issue there between reinsurers and reinsured); *see Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 562–63 n.9 (S.D.N.Y. 2001).

The other cases the Trust cites (*see* Br. 28–29) also involve circumstances in which the *only* actionable breach of contract is the refusal of a payment or other demand. Here, the breach had allegedly fully occurred before any demand could be made. By contrast, in *Russack v. Weinstein* (*cited at* Br. 28), for example, the Second Department held that where two co-owners of a corporation "agreed that if one of them made an 'excess advance' . . . [to the corporation], the other was required, within 60 days of written notice, to pay 'one-half of the amount of any excess advance so as to equalize the contributions . . . made by each of them,'" the limitations period "did not begin to run until 60 days after the plaintiff's written demand for payment." 737 N.Y.S.2d 638, 639–40 (2d Dep't 2002) (citations omitted). This is because no breach had occurred until after demand for repayment.[11] Appellant's argument here that no breach of the MLPA or PSA occurs until demand is denied cannot be reconciled with the fact that the Trust's

---

[11] *See also*, *e.g.*, *Rossi v. Oristian*, 376 N.Y.S.2d 295, 297–98 (4th Dep't 1975) ("An action such as the present one based on a stock option agreement which provides that plaintiff might exercise the option at any time, presents a situation where the Statute of Limitations does not commence to run until the person granted the option demands the stock."); *In re Bennett Funding Grp.*, 292 B.R. 476, 481–82 (N.D.N.Y. 2003) (holding that "[b]ecause defendants were under no duty to pay on the entire unpaid contract until plaintiff exercised its option under the acceleration clause, the demand in this case was substantive").

right to demand a cure or repurchase is premised on a "breach" of a representation or warranty *already* having occurred.  *See supra* at 19–20; JA-42 § 6(g); JA-32 § 2.03(b).

New York's statute of limitations law would be turned on its head if, as Appellant suggests, the limitations period did not commence until after a plaintiff chose to make a demand, and defendant rejected the demand with respect to an underlying breach that could have occurred decades earlier.  Under Appellant's view, a plaintiff could "extend the statute of limitations indefinitely 'by simply failing to make a demand.'"  *Hahn*, 18 N.Y.3d at 771 (collecting cases).  The Trust conceded those implications at oral argument:

> THE COURT:    You are saying that [the Trust] could have prolonged seeking to get out from under this agreement as long as it chose.  It could decide when to cause the breach of contract claim to accrue.  If it had waited 50 years, that would not have accrued for 50 years. . . .  You can delay, under New York law you can delay an action for breach of contract indefinitely is what you are saying, right[?] . . . .
>
> [TRUST]:    They would not be barred by limitation.

JA-66–68.

Appellant does not cite New York cases holding that a cure or repurchase demand is "substantive" such that the statute of limitations would not commence from the time of breach, but only after a post-breach demand is made and rejected,

23

and New York law does not support that position.  *See*, *e.g.*, *ACE*, 977 N.Y.S.2d at

231 (breach of contract claim "accrued" upon closing of MLPA in which

"representations and warranties contained therein [were breached]," *not* when

"defendant either failed to timely cure or repurchase"); *Nomura Asset Acceptance*

*Corp. Alt. Loan Trust, Series 2005-S4 ex rel. HSBC Bank USA, Nat'l Ass'n v.*

*Nomura Credit & Capital, Inc.*, 971 N.Y.S.2d 73, 2013 WL 2072817, at *8 (N.Y.

Sup. Ct. May 10, 2013) (same, holding that "[t]he statute of limitations 'begins to

run from the date of the first alleged breach' . . . , not from the time plaintiff

chooses to seek a remedy.  'To find otherwise would allow [plaintiff] to essentially

circumvent the statute of limitations by indefinitely deferring its demand for

payment.'") (citation omitted).[12]  Indeed, Judge Nathan recently observed that

"[w]hen a plaintiff alleges that a representation or warranty was false, the relevant

---

[12] The *Nomura* court's decision also undermines plaintiff's reliance (Br. 30–31 &
n.13) on *Lehman Brothers Holdings, Inc. v. National Bank of Arkansas*, 875 F.
Supp. 2d 911 (E.D. Ark. 2012), and *LaSalle Bank National Association v. Lehman
Brothers Holdings, Inc.*, 237 F. Supp. 2d 618 (D. Md. 2002).  *Nomura* observed
that "those decisions misapply a decision of the United States Court of Appeals for
the First Circuit . . . and are unpersuasive" and inapposite because "[t]he First
Circuit case had nothing to do with the statute of limitations and does not hold that
a failure to repurchase on demand constitutes an independent breach of contract."
2013 WL 2072817, at *8 (discussing *Resolution Trust Corp. v. Key Fin. Servs.,
Inc.*, 280 F.3d 12, 18 (1st Cir. 2002)).  The remaining cases Appellant cites (Br. 30
n.13) are equally inapt.  *See*, *e.g.*, *CitiMortgage, Inc. v. Reunion Mortg., Inc.*, No.
4:10CV1632 RWS, 2012 WL 5471165 (E.D. Mo. Nov. 9, 2012) (applying
Missouri law); *Lehman Bros. Holdings, Inc. v. Key Fin. Corp.*, No. 8:09-CV-623-
T-17EAJ, 2011 WL 1296731 (M.D. Fla. Mar. 31, 2011) (no discussion of statute
of limitations in case where plaintiff made demand three months after allegedly
false representations).

breach is the false representation or warranty, and the plaintiff has a legal right to demand payment *as of the date [the false representation] was made*.  Numerous courts have held that a defendant's failure to repurchase a breached loan *does not affect when the plaintiff's claim accrues*, and therefore does not constitute a separate breach of contract."  *Ace Secs. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, __F. Supp. 2d __, 2014 WL 1116758, at *6–7 (S.D.N.Y. Mar. 20, 2014) (emphases added) (collecting cases) ["*Ace Series 2007-HE3*"].[13]  The District Court rightly rejected the Trust's accrual-at-refusal theory.  JA-115–17.

> **2. The MLPA's "Prompt Notice" And Cure Provisions Have No Bearing On The Limitations Period Applicable To The Trust's Underlying Breach Claim.**

Contrary to Appellant's assertions, the MLPA's requirement that the Trust "promptly notify" JPM of an alleged breach of representation or warranty does not allay any fears that "the Trust's claim would be prolonged forever if the District Court ruled in the Trust's favor."  *Contra* Br. 31.  Crucially, the Trust neglects to

---

[13] *Cf.*, *e.g.*, *Westminster Props., Ltd. v. Kass*, 624 N.Y.S.2d 738, 739 (1st Dep't 1995) (requirement that lessor provide notice and opportunity to cure before commencing action was "procedural," and therefore the limitations period ran from the underlying breach of the lease, and could "not be postponed from the time of the breach until actual discovery of the wrong or injury"); *id.* ("Nor could [the] landlord prolong the statute of limitations by its delay in serving a notice to cure, since the general rule is that 'the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete,' i.e., when the wrong is committed, not discovered.") (citation omitted).

identify *when* the "prompt notice" requirement would arise, so as to serve as "the gatekeeper that governs the timeliness of a notice/demand to cure or repurchase" (Br. 32), because it cannot do so. Either the Trust waited more than *eight years* to notify JPM of an alleged breach that occurred (and accrued) in 2002—which is not "prompt" under any formulation—or Appellant is advocating for a discovery rule that would apply to promptness. This is so despite Appellant's cursory disclaimer that "the 'discovery rule' is not at issue." Br. 35. Appellant's rule, however described, would fundamentally alter New York limitations law governing contract claims. Indeed, Appellant's oral argument below largely admitted as much in contending that its claim would be timely even if the Trust postponed notifying JPM of an alleged breach or making a demand for "50 years." JA-66–68. And Appellant's arguments here concerning the "prompt notice" obligation's relationship to limitations are further belied by its assertion in the District Court that a total lack of adherence to the promptness requirement bears solely on *damages*, not the timeliness of a claim:

> THE COURT:    You are saying if the notification is not prompt, that is itself a breach.
>
> [TRUST]:    That is *not a condition precedent*, but to the extent the defendant can say that the failure to receive prompt notice prejudiced its position, then they can come forward with proof *in connection with damages*.

JA-66–67 (emphasis added).

26

The District Court (like the Court of Appeals in *Hahn*) was right to recognize the "parade of horribles" (Br. 31) that would flow from the Trust's proposed interpretation. By contrast, "the general rule in New York"—*i.e.*, accrual at the right to make a demand, irrespective of any post-discovery "prompt notice"—was adopted specifically because it "prevents [plaintiffs like the Trust] from indefinitely extending the statute of limitations by waiting to make a demand." JA-115 (citing *Hahn*, 18 N.Y. 3d at 770).

### 3. The Demand Provision Does Not Provide An Independent Basis For Relief.

Appellant fares no better in arguing that the MLPA's "sole remedy" provision somehow offers the Trust an *independent* breach, divorced from any underlying breach of representation or warranty that would trigger the protocol. *See* Br. 20–21; JA-42 § 6(g). Appellant asserts that because that provision states that "'no limitation of remedy is implied with respect to the Seller's breach of its obligation to cure or repurchase in accordance with the terms and conditions of [the MLPA],'" JPM's "obligation to [cure or] repurchase is not only a remedy" but also "an independent duty that [JPM] could breach." Br. 20 (emphasis removed) (quoting JA-42 § 6(g). The Trust does so only by ignoring language from the same provision of the MLPA that defines the cure-or-repurchase obligation as "the *sole remedy* available to [the Trust] *in connection with a breach of any of [JPM's] representations or warranties*." JA-42 § 6(g) (emphasis added).

27

Reading the provision as a whole, as the District Court did, makes plain that the "no limitation of remedy" language that Appellant has isolated—which, indeed, is introduced with "*provided*, *however*," *id.*—simply means that once the Trust made a demand and afforded JPM the opportunity to cure or repurchase an allegedly breaching loan, it is free to file suit (as it did here) to contest a failure to cure or repurchase. However, the breach that gives rise to any repurchase obligation is the "*breach of . . . [the] representations and warranties.*" *Id.* (emphasis added). Without that breach, or if the time to assert that breach has elapsed, the Trust has no claim. *See* JA-116 (observing that "[t]he demand at issue here is . . . merely a procedural prerequisite to suit"). Thus, the portion of the demand provision Appellant has isolated says nothing about (and has no relevance to) the limitations period for an alleged breach of representation or warranty that must exist and precede the demand. It cannot mean that the Trust is entitled to bring suit to enforce a remedial provision *without any timely underlying breach of representation or warranty*. That, as shown above, is irreconcilable with the contract's language. Indeed, that the Trust *itself defines the term* "Breach" in its Complaint as "a breach of any representation or warranty in the MLPA" (JA-22 ¶ 65) further confirms this reading.

Appellant's "independent breach" theory has been rejected with near uniformity. For instance, in interpreting similar provisions, the First Department

recognized that a breach of contract claim "accrued" upon the closing of the MLPA in which "representations and warranties contained therein [were breached]," not when "defendant either failed to timely cure or repurchase." *ACE*, 977 N.Y.S.2d at 231.[14]  Similarly, as explained by a New York State Supreme Court in dismissing time-barred claims akin to the Trust's here, "[t]he repurchase obligation in this case is merely a remedy.  It is not a duty independent of the Mortgage Representation breach of contract claims." *Nomura*, 2013 WL 2072817, at *8; *see also GreenPoint*, 2014 WL 108523, at *4 (defendant's "alleged failure to comply with its cure or repurchase obligations does not give rise to a separate breach of contract at the time of refusal").[15]

---

[14] This is true even of courts analyzing ostensibly timely MLPA breach claims. *See*, *e.g.*, *Ace Series 2007-HE3*, 2014 WL 1116758, at *6–7 ("a defendant's failure to repurchase a breached loan . . . does not constitute a separate breach of contract," and that so-called "'independent' failure-to-repurchase claims . . . are not independently actionable"); *Citigroup Mortg. Loan Trust 2007-AMC3 ex rel. U.S. Bank, Nat'l Ass'n v. Citigroup Global Markets Realty Corp.*, No. 13 Civ. 2843(GBD), 2014 WL 1329165, at *5 (S.D.N.Y. Mar. 31, 2014) ("the failure to cure or repurchase does not constitute an independent breach of the contract under New York law so as to vitiate the sole remedy provision"); *Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 131–32 (S.D.N.Y. 2014) (same); *Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 499–500 (S.D.N.Y. 2013) (New York law "does not recognize pre-suit remedial provisions as constituting separate promises which can serve as the basis for independent causes of action").

[15] The Trust's assertion that "the District Court did not quote any language from the MLPA and thus did not even address" the remedy provision is baseless.  Br. 21.  To the contrary, the District Court observed that "[t]he MLPA provided that

It is untenable, therefore, for Appellant to argue that JPM somehow "agreed" (Br. 21) that the Trust has an independent breach claim if JPM does not cure or repurchase.  There is no indication that the contract sought to transform the "sole remedy" provision, which was effected to *limit* JPM's liability in a manner consistent with the backdrop of state law, into one that would *extend*, in perpetuity, the duration of that liability, and ignore the very breach and cause of action that gave rise to that remedy.  *Cf. Metro. Life. Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994) (observing that "limitation[s] on liability . . . in a contract . . . represent[] the parties' [a]greement on the allocation of the risk of economic loss" that "courts should honor").

### 4.  The District Court Appropriately Adhered To The First Department's Decision in *ACE*.

The District Court was right—and indeed "bound," *Cornejo*, 592 F.3d at 130—to follow the First Department's *ACE* decision.  *See* JA-116–17; *supra* at 12. As here, the plaintiff in *ACE*, having brought suit more than six years after the execution of an MLPA and PSA, argued that its claim "did not accrue until defendant either failed to timely cure or repurchase a defective mortgage loan." 977 N.Y.S.2d at 231.[16]  But the First Department, relying on well-established New

---

such [cure-or-repurchase] demand was 'the sole remedy available to the Purchaser' in the event of breach [of representation or warranty]."  JA-111 (citing the MLPA).

[16] The contractual cure-or-repurchase protocol language in the *ACE* PSA is similar to that here.  *Compare ACE* PSA § 2.03 (Compl. Ex. A, *ACE Sec. Corp. v. DB*

York law, correctly held that, "[t]o the contrary, the claims accrued on the closing

date of the MLPA . . . when any breach of the representations and warranties

contained therein occurred." *Id.* (citing, *inter alia*, *Ely-Cruikshank*, 81 N.Y.2d at

402).

Should this Court proceed to resolve this case and the pending appeal in

*GreenPoint* (No. 14-0399 (set for argument on September 15, 2014)) before *ACE*

is decided by the Court of Appeals, the First Department's decision should control

the outcome here. When this Court sits in diversity, it is "bound, as was the district

court, to apply the law as interpreted by New York's intermediate appellate courts

. . . unless we find persuasive evidence that the New York Court of Appeals, which

has not ruled on [the] issue, would reach a different conclusion." *Pahuta v.*

*Massey-Ferguson, Inc*., 170 F.3d 125, 134 (2d Cir. 1999) (collecting cases); *see*

*United States v. Glenn Gardens Assocs., L.P.*, 534 F. App'x 17, 21–22 (2d Cir.

---

*Structured Prods., Inc.*, No. 650980/2012 (N.Y. Sup. Ct. 2012)) (requiring trustee
to "promptly notify" seller "[u]pon discovery or receipt of notice of . . . any
breach" that "materially and adversely affects the value of such Mortgage Loan or
the interest therein" triggering cure-or-repurchase obligation), *available at*
https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=NzeV/
oZCpal17VtRBqO1Xg==&system=prod, *with* JA-32–33 § 2.03 (requiring "prompt
written notice" to JPM if the Trust "discovers or receives notice of" a breach that
"materially and adversely affects the value of any Mortgage Loan, the related
Mortgaged property or the interests . . . therein," triggering cure-or-repurchase
obligation). Indeed, the protocol at issue here is broader than that in *ACE*, as it is
triggered upon a breach that has a "material[] and adverse[] [e]ffect" on a
"Mortgage Loan," *or* also on "the *related Mortgaged property*" (JA-32–33 § 2.03
(emphasis added))—which the Trust alleges occurred in 2002. *See infra* at 37–40.

2013) (observing that when the Court is "'faced with a question of New York law that is decisive but unsettled, we may "predict" what the state's law is, consulting any rulings of its intermediate appellate courts and trial courts,'" and that, like here, "[f]ortunately, we have as guidance a recent decision of the First Department . . . that is precisely on point") (citation omitted); *see also supra* at 12 & n.6.

> **a. Appellant Does Not And Cannot Point To Persuasive Evidence That The Court of Appeals Would Resolve The Question Presented Here Differently Than The First Department Has.**

If this Court resolves this appeal before the Court of Appeals decides *ACE*, it should follow the First Department's decision because Appellant has not argued—let alone come forward with any persuasive basis—that the Court of Appeals would reach a contrary result. *See Pahuta*, 170 F.3d at 134 (following appellate division decision where, as here, plaintiff "has not provided us with any reason to believe that the New York Court of Appeals would disagree"). For instance, this is not a situation in which the Departments are divided, or where a Department has "expand[ed]" a state law cause of action. *Compare*, *e.g.*, *Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 496–97 (2d Cir. 2013) (declining to follow divided Third Department decision that "appear[ed] to have expanded" scope of claim for breach of confidentiality under New York law, and that was "the only relevant signpost on the question"). On the contrary, *ACE* is consistent with *Hahn*, CPLR § 206(a), and other longstanding New York precedents.

32

Further, *ACE* is a far cry from the sole "relevant signpost" here. The New York Supreme Court, whose rulings this Court consults in predicting state law, *see*, *e.g.*, *Glenn Gardens*, 534 F. App'x at 21–22, drew the same conclusion in this context before the First Department decided *ACE*. *See Nomura*, 2013 WL 2072817, at *8 (holding that MLPA breach claim premised on representations and warranties that were allegedly untrue when made, but filed more than six years after closing, was time-barred).[17] In addition to the District Court's decision here, federal district courts applying New York law likewise dismissed as untimely breach of contract claims in the MLPA setting before *ACE*. *See Daiwa*, 2003 WL 548868, at *2–3; *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1194 (W.D. Wash. 2011) (applying New York law).[18]

---

[17] Since the First Department's decision, the state trial courts have applied it to dismiss claims as time-barred. *See*, *e.g.*, *Fed. Hous. Fin. Agency v. DB Structured Prods., Inc.*, No. 652978/2012, 2014 WL 1384489, at *1 (N.Y. Sup. Ct. Mar. 17, 2014); *Home Equity Asset Trust 2006-5 ex rel. U.S. Bank Nat'l Ass'n v. DLJ Mortg. Capital, Inc.*, 984 N.Y.S.2d 632 (Table), 2014 WL 27961, at *2–3 (N.Y. Sup. Ct. Jan. 3, 2014).

[18] After the First Department's decision, Judges Cedarbaum and Scheindlin reached the same result, whereas, as the Trust notes (Br. 34 n.15), Judge Hellerstein issued a handwritten order denying reconsideration of his denial of a defendant's motion to dismiss. *See* JA-158 (*Fed. Hous. Fin. Agency v. WMC Mortg., LLC*, No. 13 Civ. 584 (AKH), slip op. (S.D.N.Y. June 2, 2014)). That cursory order does not point to any "persuasive evidence" suggesting that the Court of Appeals would arrive at a different result than the First Department. Moreover, Judge Hellerstein's original denial of defendant's motion to dismiss was based *exclusively* on the underlying trial court decision that the First Department reversed in *ACE*. *See Fed. Hous. Fin. Agency v. WMC Mortg.*, No. 13 Civ. 584 (AKH), slip op. (S.D.N.Y. Dec. 17, 2013).

Rather than offering persuasive evidence that the Court of Appeals would decide *ACE* differently, Appellant contends that *ACE* is simply inapplicable here (it makes the same claim as to *Daiwa* and *GreenPoint*).  *See* Br. 33–35 & n.16. This is a strange assertion, given that the Trust told Judge Cedarbaum that the trial court's decision in *ACE* "*bears directly on*" JPM's motion, and "*squarely addresses the identical statute of limitations issue*" that now confronts this Court. Dkt. 31, Ex. 3 at 1 (May 15, 2013 Ltr. to Judge Cedarbaum from G. Cross) (emphasis added).  Appellant now contends that the First Department's *ACE* decision "ultimately turned on the plaintiff's lack of standing to bring suit."  Br. 33.  That is wrong.  The First Department *first* squarely held that the plaintiff's MLPA breach claims "accrued on the closing date of the MLPA, . . . when any breach of the representations and warranties contained therein occurred," and *not* when the "defendant either failed to timely cure or repurchase a defective mortgage loan."  *ACE*, 977 N.Y.S.2d at 231.[19]  Thereafter, the First Department made an *alternative* holding regarding standing.  *See* Br. 33 (acknowledging the First Department stated that "*[i]n any event*"—*i.e.*, separate and apart from its core holding concerning untimeliness—plaintiff lacked standing) (quoting *ACE*).

---

[19] Indeed, this is the issue upon which Court of Appeals granted review.

Accordingly, if this Court decides this appeal before the Court of Appeals resolves *ACE*, the First Department's decision controls the outcome.  *E.g.*, *Pahuta*, 170 F.3d at 134.

### b. The Trust's Attempt To Distinguish Other Cases Decided Consistently With *ACE* Is Unavailing.

Given the existence of the outcome-determinative state appellate authority, Appellant's attempts to distinguish the district court decisions in *Daiwa* and *GreenPoint*, which are consistent with *ACE*, are beside the point.  They also are unpersuasive.

For instance, Appellant points to distinctions without a difference in noting that in *Daiwa*, the plaintiff "made a demand in accordance with a no-action clause" as opposed to a notice provision, or that the MLPA representations and warranties allegedly breached there were different.  Br. 34.  The material circumstances in *Daiwa* parallel those here.  *Daiwa* also was a breach of contract action based on alleged misrepresentations in an MLPA.  *See* 2003 WL 548868, at *1. Furthermore, Appellant concedes that *Daiwa* held—like *ACE* and the District Court here—that "demand was not an essential element to the existence of their cause of action for breaches of the representations and warranties," and that "the actionable breach occurred when the representations and warranties were made." Br. 34–35.

Finally, Appellant's attempt to distinguish *GreenPoint* by asserting that it "does not involve a sole remedy provision" (Br. 35 n.16), is unavailing, and while "the defined terms in the *GreenPoint* contract are different" (*id.*), they are different in a manner that further undermines Appellant's accrual theory here. The MLPA in *GreenPoint* contained an "Accrual Provision" which "in fact '*define[d] the breach* from which the limitations period [began] to run.'" 2014 WL 108523, at *3 (emphasis in original) (citation omitted); *see id.* at *4 (rejecting plaintiff's "attempts to distinguish *ACE*") (citation omitted). As in *ACE* (and unlike in *GreenPoint*), the MLPA at issue here contains no such "accrual" language. *See* JA-36–49. And *GreenPoint* properly recognized that, in any event, the accrual language did not stop the limitations clock from running on an *underlying* breach of representations and warranties, because "parties may not contractually adopt an accrual provision that effectively extends the statute of limitations before any claims have accrued." 2014 WL 108523, at *4 (citing, *inter alia*, *John J. Kassner & Co. v. City of N.Y.*, 46 N.Y.2d 544, 551 (1979)).

### C. Appellant Is Mistaken In Arguing That, Even If The Demand Provision Is Procedural, It Did Not Have The Ability To Make A Demand Until 2009.

The District Court also appropriately rejected the Trust's alternative argument that, in the event the demand provision is procedural, the Trust did not have a right to make a demand until 2009. JA-117–19. Appellant asserts that it

36

supposedly was not materially and adversely affected until after all the Anchor Stores had closed and a default had been alleged under the Ground Lease.  Br. 39–40.  In doing so, Appellant again runs from the Complaint's allegations, and seeks to toll the accrual of its contract claim until after the Trust both had discovered JPM's purported breach and default had been declared under the Ground Lease.

### 1. The District Court Properly Read The Complaint To Allege That Material And Adverse Effects Existed At The Time Of The Purported Misrepresentations.

The District Court correctly concluded that the Trust's current "construction of the [material and adverse effect] requirement is at war with its pleadings."  JA-117.  It properly recognized that the Complaint alleges specific material and adverse effects at or around the time JPM purportedly misrepresented "that the Ground Lease 'does not restrict the use of the related Mortgaged Property . . . in a manner that would materially and adversely affect the security provided by the Mortgage,'" and those effects would have enabled the Trust immediately to make a cure or repurchase demand.  *Id.*  Indeed, in opposing JPM's motion before the District Court, the Trust admitted that it alleged the requisite material and adverse effect that would have allowed it to make the demand in 2002.  Specifically, the Trust acknowledged that its 2010 demand letter "explained (*as is alleged in the Complaint*), that contrary to [JPM's] representation in Section (xx)(1), the Ground Lease did in fact contain a use restriction, namely, the First Class Mall Restriction,

37

*that materially and adversely affected the Leased Property*." Dkt. 23 (MTD Opp.)
at 7 (citing JA-18–20 ¶¶ 48–58; JA-51–55) (emphasis added); *see also* JA-53
(demand letter: "Section 5.06(a) of the Ground Lease clearly is a restriction on the
use of the Mortgaged Property by the lessee, which *has materially and adversely
affected the security provided by the Mortgage* because, among other reasons,
Section 5.06(a) *restricts the Special Servicer's ability to sell the Mortgaged
Property following foreclosure and severely limits the Special Servicer's workout
options*.") (emphasis added). For instance, the Complaint alleged, *inter alia*, that:

- the addition of the First Class Mall Restriction to the Ground Lease "***[a]t the
  time of loan origination***" in 2002 made it "incapable of cure," JA-9 ¶ 1
  (emphasis in original);

- JPM "originated a Loan that gave the initial assignee of the Loan no ability
  to control compliance with the conditions of its collateral at any point *dating
  from August 2001*," *id.* ¶ 2 (emphasis added);

- "[t]he inclusion in the Ground Lease of the First Class Mall Restriction . . .
  breached," *inter alia*, JPM's "represent[ation] to the Trust that the Ground
  Lease would 'not restrict the use of the related Mortgage Property . . . in a
  manner that would materially and adversely affect the security provided by
  the Mortgage,'" JA-10 ¶ 4;

- "[t]he cessation of the requirement that the Anchor Stores operate as retail stores"—which occurred in August 2001 (*see* JA-13 ¶ 21)—"*had a significant negative effect* on the retail occupancy of the Leased Property," JA-16 ¶ 36 (emphasis added); and

- the First Class Mall Restriction constituted a "fatal flaw at origination," JA-21 ¶ 63, that was both "incapable of performance" and "impossible to satisfy," JA-20–21 ¶ 61.

These allegations and assertions fully support the District Court's conclusions, and demonstrate that "[a]ll of these alleged facts" purportedly comprising a material and adverse effect "existed at the time of origination and at the time the MLPA was executed in 2002." JA-114. They also make clear that the material and adverse effect claimed by Appellant was allegedly brought about by restrictions or limitations in contractual documents that existed at the time the MLPA was executed and JPM's alleged misrepresentations were made. Indeed, even Appellant's current recitation here of supposed "facts [that] go to the condition of material and adverse impact" (Br. 42) confirm that the alleged material and adverse effect on which it is relying existed to enable and require a demand at the time the alleged misrepresentations were made. Appellant asserts that "[JPM's] breaches of the Representations interfered with the Trust's ability to transfer or assign its collateral, reposition the Leased Property, and workout the

Loan," and that "without control over the Anchor Stores, the Trust could not ensure that they were operating at all times in a way that preserved the retail nature of the mall and supported the retail occupancy of the Leased Property in order to satisfy the First Class Shopping Mall Restriction." Br. 41–42 (citations omitted). These are *all* alleged infirmities impacting the Leased Property that existed at the MLPA's April 29, 2002 execution.

Under Appellant's own theory of the case, no discovery is needed to determine "when the Trust sustained a material and adverse [effect]." *Contra id.* at 42. Rather, as the District Court properly recognized, the Trust alleged that "the value of the property" was diminished at the time of origination. JA-117. The court correctly held that these allegations of a "'fatal flaw at origination'" constituted a "material[] and adverse[] [e]ffect[]," which permitted Appellant to make a demand in 2002. JA-118 (collecting cases).[20]

As demonstrated above, the District Court's reading of the pleadings was accurate, and the court patently did not "[draw] inferences" against the Trust.

---

[20] *Cf. MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 963 N.Y.S.2d 21, 22–23 (1st Dep't 2013) (rejecting argument that "default" was necessary "to trigger defendants' [repurchase] obligation" under demand provision requiring "material[] and adverse [e]ffect," although casting doubt on whether plaintiff could ultimately "*prove*" that such a "material[] and adverse [e]ffect[]" existed on the merits) (emphasis added) (citation omitted); *Wells Fargo Bank, N.A. v. Bank of Am., N.A.*, No. 10 Civ. 9584(JPO), 2013 WL 1285289, at *10 (S.D.N.Y. Mar. 28, 2013) ("[T]he breach [of representations and warranties in an MLPA] *need only cause harm*, though not necessarily default.") (emphasis added) (collecting cases).

*Contra* Br. 39 & n.18. Rather, there simply were no "*reasonable* inferences [to be drawn] in favor of" the Trust. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (emphasis added). Indeed, the "example" inferences the Trust would have this Court draw in its favor are objectively *un*reasonable. *See* Br. 39–40. For instance, Appellant argues that "the District Court should have inferred that because [American General Life and Accident Insurance Company] had not declared a default under the Ground Lease until 2009 prior to that time the inline portion of the mall satisfied the First Class Shopping Mall Restriction." Br. 40 n.19. This would have required the District Court unreasonably to ignore the Trust's central allegation that the Ground Lease's First Class Mall Restriction was "*impossible to satisfy*" (JA-20–21 ¶ 61 (emphasis added)), from the time the Ground Lease had been amended in 2001 (*e.g.*, JA-13 ¶ 17). And if there were no material and adverse effect at that time sufficient to make a demand, then JPM's representation—that no material and adverse effect existed—certainly was not a breach.[21]

---

[21] This Court should disregard Appellant's repeated assertions that JPM made admissions "in other mortgage-backed securities litigation" concerning material and adverse effect, as those assertions are premised on language wrenched out of context from JPM's briefing in another case, which involved materially different contract language and allegations. Br. 47; *see also*, *e.g.*, *id.* at 12, 38. As JPM explained below, the statements—which the Trust contended below give rise to judicial estoppel (JA-128)—in a reply brief in support of partial summary judgment in *Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Corp.*, No. 1:09-cv-01656 (RMC) (D.D.C. May 18, 2012) ("*Deutsche Bank*"), are consistent with

Finally, Appellant's attempt to argue that JPM's cure right—which the Trust alleged had been rendered "impossible to satisfy" since even before the MLPA had been executed (JA-20–21 ¶ 61)—should lengthen the statute of limitations (*see* Br. 47–48) is just dressing up old arguments in new clothing.  If a material and adverse effect has been alleged under the Trust's theory at the time of the alleged breach, in 2002, then a demand could have been made and the statute of limitations accrued and was running at that time.  No demand or opportunity to cure stops that clock.[22]

---

JPM's arguments here.  In *Deutsche Bank*, JPM argued that "[o]n the face of [plaintiff's] Amended Complaint, the statute of limitations bars [plaintiff's] claims under most of the Agreements" at issue because plaintiff "*has alleged not one breach or material and adverse effect that occurred after these securitizations closed*."  JA-144 (emphasis added).  Here, despite Appellant's attempt to re-write its Complaint, the Trust *has* pleaded and alleged a material and adverse effect giving rise to a breach claim as of the closing date in 2002.  *See supra* at 37–40.  Furthermore, as JPM showed in the District Court, the Trust's estoppel argument was meritless in any event because the *Deutsche Bank* court did not adopt JPM's arguments (*see* Minute Order, *Deutsche Bank*, No. 1:09-cv-01656 (RMC) (D.D.C. Apr. 5, 2011))—which is a requirement of judicial estoppel.  *See OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 93 n.3 (2d Cir. 2006) (requiring that a party "'has had that earlier position adopted by the tribunal to which it was advanced'") (citation omitted).

[22] Moreover, Appellant's arguments (Br. 47–48) that the parties agreed to toll the limitations period for a breach claim until after JPM's cure opportunity had lapsed also must fail because, even if correct (and they are not), such arguments would directly contravene New York law, under which agreements extending in advance of accrual the statute of limitations beyond six years "have 'no effect.'"  *John J. Kassner & Co.*, 46 N.Y.2d at 551–52 (quoting N.Y. Gen. Oblig. Law § 17-103(3)); *accord GreenPoint*, 2014 WL 108523, at *4.

## 2.  Appellant Erroneously Argues That Its Claims Did Not Accrue Until Default.

Appellant's mistaken interpretation of the governing accrual rules is borne out by its assertions that *Daiwa* and *GreenPoint* are distinguishable because each involved the discovery rule, while "the 'discovery rule' is not at issue here." Br. 35; *see id.* at 34–35 & n.16.  This is pure formalism.  Whether called a "discovery rule" or an "accrual-at-injury rule," both have long been rejected under New York law in the breach of contract context.  The District Court recognized as much in dismissing the Trust's claims.  It observed that the Trust argued that "even if [CPLR] § 206(a) applies, the MLPA permitted demand only when a breach of a representation or warranty 'materially and adversely affect[ed] the value' of the loan [or the related Mortgaged Property], and that no material and adverse effect [] was present until default occurred in 2009," *i.e.*, that the Trust "was unable to make a demand until it incurred a financial loss resulting from the breach."  JA-117.  Then, as the District Court noted, this identical argument was made and rejected—in this very context—in *Daiwa*:  "[i]n effect, plaintiffs are asking this Court to find that, in contract cases where there is a demand requirement, [CPLR] § 206(a) imposes the otherwise rejected accrual-at-injury rule."  2003 WL 548868, at *3 (*quoted at* JA-119).  More fundamentally, as demonstrated *supra* at 37–40, the Trust alleged that JPM's alleged breach had a material and adverse effect *at the time of breach*, in 2002.  Appellant's argument is a veiled attempt at rewriting both

43

its Complaint and briefs to the District Court, and now alleging that the clock should not begin to run until the Trust discovers the alleged breach and sustains injury and damages on account of default under the Ground Lease.  This is at odds with the Trust's pleadings and prior statements, as well as New York law and the fundamental policy underlying the absence of a discovery rule for contractual statutes of limitation.  *See* JA-112 (citing "'well settled'" New York law holding "that the statute of limitation for breach of contract begins to run from the day the contract was breached, *not from the day the breach was discovered*, *or should have been discovered*' . . . *even when the alleged injury occurs after the breach itself*") (emphasis added) (citations omitted).

This Court's decision in *T & N PLC v. Fred S. James & Co. of N.Y., Inc.*, 29 F.3d 57, 59 (2d Cir. 1994), is instructive.  There, the plaintiff argued that although defendant allegedly breached a brokerage contract in 1980 and 1981, plaintiff's claims for breach brought in 1989—based on an alleged failure to disclose risk information to third parties—did not accrue until 1987, when plaintiff first incurred a monetary loss.  *Id.* at 59.  In rebuffing plaintiff's argument, the Court stated that "the Court of Appeals . . . has declined to adopt an accrual-at-injury rule, even where breach and damages are not simultaneous," and "that in contract actions, the cause of action accrues and the statute of limitations commences at breach *even though no damage occurs until later*."  *Id.* at 59–60 (emphasis added) (citing *Ely-*

44

*Cruikshank*, 81 N.Y.2d at 401–03); *see also*, *e.g.*, *Elie Int'l, Inc. v. Macy's W. Inc.*, 965 N.Y.S.2d 52, 53 (1st Dep't 2013) (dismissing contract claim as untimely and observing that "[w]hile plaintiff argues that the amount sued for 'did not become apparent until April 2008,' this argument is immaterial, since the existence of a cause of action for breach of contract does not depend upon a party's knowledge that it has suffered an injury") (collecting cases).[23]

The same is true of the Trust here:  if, as it has alleged, JPM's representation in the MLPA "that the Ground Lease did not contain any use restrictions that would materially and adversely affect the security provided by the Mortgage" was untrue when made in 2002, then that is when JPM breached the MLPA, and that is when the Trust's claims accrued.  The material and adverse effect alleged by the Trust emanated from contractual restrictions or a lack of contractual rights, all of

---

[23] *Accord Chelsea Piers L.P. v. Hudson River Park Trust*, 964 N.Y.S.2d 147, 149 (1st Dep't 2013) (rejecting "[p]laintiff's argument that it could not have sued for breach of contract before 2009 because it had sustained no damages" as "unavailing" because "'[i]n New York, a breach of contract cause of action accrues at the time of the breach,' even if no damage occurs until later") (quoting *Ely-Cruikshank*, 81 N.Y.2d at 402); *Brooks v. AXA Advisors, LLC* , 961 N.Y.S.2d 648, 650 (4th Dep't 2013) (affirming dismissal of contract claim where, as here, plaintiff's "cause of action accrued upon the alleged breach of contract by defendants, which occurred more than six years prior to the commencement of the action, regardless of whether the damage to plaintiffs was sustained later and plaintiffs were unaware of the breach at the time it occurred"); *St. George Hotel Assocs. v. Shurkin*, 786 N.Y.S.2d 56, 57 (2d Dep't 2004) ("The plaintiffs' cause of action to recover damages for breach of contract accrued, and the relevant six-year statute of limitations began to run, upon the breach, not when the plaintiffs allegedly sustained damages arising therefrom.") (collecting cases).

which were in place when the MLPA was executed.  To say that no demand need be made until some other injury has been sustained, as opposed to the material and adverse effects alleged in the Trust's pleadings and other statements, is merely to attempt to avoid the clear requirements of New York law.  The District Court therefore correctly dismissed the Trust's Complaint, which was not filed until over a decade after the alleged material and adverse effect, as time-barred.  *See*, *e.g.*, *Ely-Cruikshank*, 81 N.Y.2d at 401–03; *T & N PLC*, 29 F.3d at 59–60; *accord* JA-112, 119 (acknowledging "New York's well established accrual-at-breach rule" applicable to contract claims, and its well established rejection of either a discovery or accrual-at-injury rule).

### 3.  Appellant's Additional Attacks On The District Court's Reasoning Are Unavailing.

On appeal, the Trust attacks the District Court's reading of its arguments and allegations.  It argues that (1) the District Court inappropriately equated a "theoretical risk of loss" with a material and adverse effect (*see* Br. 41–45), and (2) the plain language of the representation that JPM purportedly breached, *i.e.*, that in 2002 the Ground Lease did not contain any restriction "*that would* materially and adversely affect the security provided by the Mortgage," augurs for a delay in the accrual of the Trust's breach claim (*id.* at 46–47 (quoting JA-48)).  Both arguments fail.

46

*First*, Appellant's protestations that the District Court equated a "theoretical risk of loss" with a "material and adverse effect" (Br. 43–44) are misguided. To start, as detailed above, the Trust explicitly pleaded that JPM's alleged breaches of representations and warranties caused the Trust to suffer immediate and certain harm in 2002. *See supra* at 38–39 (collecting allegations). Further, the problems that the Trust alleged were inherent in the relevant agreements at origination were anything but "theoretical." Rather, as shown above, the Trust alleged that they were tangible, irreversible, and impossible to cure. These problems allegedly negatively impacted the Leased Property in 2002, establishing the requisite material and adverse effect at that time.

*Second*, the *express language* of the MLPA representation that JPM allegedly breached at the time of the MLPA—*i.e.*, that the "'Ground Lease . . . does not restrict the use of the related Mortgaged Property . . . ***in a manner that***

***would* materials and adversely affect the security provided by the Mortgage**'"

(Br. 46) (emphasis in original) (quoting JA-48 § (xx(1)))—is not "[i]rrelevant" to the statute of limitations (Br. 46–47). Indeed, the basis for the Trust's breach of contract claim is that JPM falsely represented "that the Ground Lease did not contain any use restrictions that would materially and adversely affect the security provided by the Mortgage"—a representation that the Trust alleged was false when made in 2002. JA-18–19 ¶ 51; *see* JA-19 ¶ 52 ("[JPM's] representation and

warranty in Section (xx)(l) of Exhibit B to the MLPA [JA-47–48 ¶ (xx)(1)] *was untrue*") (emphasis added); *see also* JA-18 ("***[JPM's] Representation and Warranty in the MLPA Regarding the Ground Lease Was Untrue***") (emphasis in original).[24]

Even if the Trust had not demonstrably alleged a material and adverse effect in 2002 (though, as shown, it has), its allegations that JPM's representation in Section (xx)(1) was false when made confirm that the limitations period commenced then.  This is not a "red-herring," as Appellant suggests (Br. 46), but rather a straightforward reading of the relevant representation's terms.  Where, as here, the purported breach is the representation that no restriction exists *that would* materially and adversely affect the Leased Property, Appellant cannot have it both ways:  if there were indeed a breach of that specific representation of no material and adverse effect, a sufficient material and adverse effect to trigger the ability to make a demand also existed, and if the Trust could not make such a demand in 2002, then there was no breach.  *See Nomura*, 2013 WL 2072817, at *7–9 (dismissing claim as untimely where "the Mortgage Representations are alleged to

---

[24] The Trust's arguments, both below and on appeal, confirm this.  *See* Dkt. 23 (MTD Opp.) at 7 ("[C]ontrary to [JPM's] representation in Section (xx)(1), the Ground Lease did in fact contain a use restriction, namely, the First Class Mall Restriction, that materially and adversely affected the Leased Property.") (citing JA-18–20 ¶¶ 48–58; JA-51–55); *accord* Br. 39–40 (alleging that "[w]hen [JPM] sold the Loan and made its Representations about the Loan in 2002, . . . [JPM's] Representations *were untrue*") (emphasis added).

have been false when made"). Here, as in *Nomura*, the representations at issue "did not arise or change over time. If the Mortgage Representations were false when made, they are still false today. If they were true when made, they are still true today." *Id.*; *see also W. 90th Owners*, 525 N.Y.S.2d at 35–36 (the "representation . . . was false when made" and "[t]hus, the breach occurred at the time of the execution of the contract"); *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 370 (N.D.N.Y. 2013) (same), *aff'd*, __ F. App'x __, 2014 WL 1284842 (2d Cir. Apr. 1, 2014); *accord Ace Series 2007-HE3*, 2014 WL 1116758, at *6–7 ("When a plaintiff alleges that a representation or warranty [in an MLPA] was false, the relevant breach is the false representation or warranty, and the plaintiff has a legal right to demand payment as of the date it was made.").

## II. THE TRUST WAIVED ITS "CONTINUING PERFORMANCE" ARGUMENT WHICH, IN ANY EVENT, IS WRONG.

Relying chiefly on *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606 (1979), the Trust argues, for the first time on appeal, that "[t]he MLPA creates an obligation of 'continuing performance' under New York law," such that "'each successive breach may begin the statute of limitations running anew.'" Br. 22 (quoting *Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007)).

Because the Trust failed to make this argument in the District Court, the Court should decline to entertain it. Even if this Court exercises its discretion to consider this newly raised issue, it would not save the Trust's time-barred claim,

because it lacks support in the parties' agreements.  *See* JA-114 ("All of the[] alleged facts [constituting breach] existed at the time of origination and at the time the MLPA was executed in 2002.").

### A. The Court Should Decline To Consider The "Continuing Performance" Claim Because The Trust Inexcusably Failed To Raise This Issue In The District Court.

Before the District Court, the Trust raised various (and inconsistent) theories concerning the accrual of its untimely breach of contract claim.  The Trust never asserted, however, that the MLPA's cure-or-repurchase remedy constitutes a "continuing performance" obligation under New York law.  *See* Br. 22–24.

This Court should again adhere to the "'well-established general rule that an appellate court will not consider an issue raised for the first time on appeal,'" and will deem it waived.  *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 503–04 (2d Cir. 2006) (citation omitted) (refusing to consider, on appeal from dismissal on statute of limitations grounds, alternative argument for timeliness of contract claims not raised below); *see In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132–33 (2d Cir. 2008) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal.") (internal quotation marks and citation omitted).  Although this prudential rule leaves the Court leeway to consider waived arguments, "the circumstances normally 'do not militate in favor of an exercise of

discretion to address . . . new arguments on appeal' where"—as here—"those arguments were 'available to the [parties] below' and they 'proffer no reason for their failure to raise the arguments below.'" *Bogle-Assegai*, 470 F.3d at 503–04 (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005)).

Because Appellant's newly raised "continuing performance" argument (Br. 23) clearly was available to the Trust in opposing dismissal below, and because Appellant does not and cannot show any justification for failing to raise it, this Court should decline to consider it here. *Bogle-Assegai*, 470 F.3d at 503–04; *see also*, *e.g.*, *Haining Zhang v. Schlatter*, 557 F. App'x 9, 11 (2d Cir. 2014) (likewise declining to consider alternative argument for timeliness not raised below); *Odom v. Doar*, 497 F. App'x 88, 89–90 (2d Cir. 2012) (same), *cert. denied*, 133 S. Ct. 2864 (2013); *Pope v. Enzo Biochem, Inc.*, 432 F. App'x 7, 8–9 (2d Cir. 2011) (same).

## B. The MLPA Does Not Require "Continuing Performance."

Even if the Court were to consider the belated "continuing performance" claim, Appellant is incorrect on the merits. Indeed, *Bulova*, 46 N.Y.2d 606, the Trust's main purported source of support (*see* Br. 22–23), illustrates why Appellant is wrong.

In *Bulova*, the plaintiff, who had purchased roofing materials from the defendant, alleged that the defendants had breached an implied warranty of fitness

because the materials were not fit for their intended use. *Id.* at 608–09. The Court of Appeals held that the warranty claim "does not hold water," and was "barred by the Statute of Limitations" because "the cause of action arose at the time of the sale." *Id.* at 609–10. Because the roofing supplies in *Bulova* either were or were not as warranted at the time they were sold—as with the Highland Mall Loan here—if there was a breach at all, it happened at the time of sale, and the limitations period began to run then. *Id.*

However, in *Bulova*, the parties *also* entered into a *separate* contract under which the defendants promised to repair and keep the roof in watertight condition for twenty years. *Id.* at 608. And "the defendants did not merely guarantee the condition or performance of the goods," over the twenty-year period, "but agreed to perform a service[—]to repair the roof." *Id.* at 611–12. The MLPA and PSA at issue here, by contrast, involve nothing more than representations and warranties, and a provision specifying the sole remedy (cure-or-repurchase) for breaches. Appellant erroneously conflates contracts where "repair or replacement" are *remedies* for breaches of warranties with contracts involving (as in *Bulova*) additional "repair or replacement" *warranties* separate and apart from their underlying product warranty. Courts routinely and appropriately distinguish between these concepts. *See*, *e.g.*, *St. Patrick's Home for Aged & Infirm v. Laticrete Intern., Inc.*, 696 N.Y.S.2d 117, 123 (1st Dep't 1999) ("A warranty of

future performance is one that guarantees that the product will work for a specified period of time.  Warranties to repair or replace the product in the event that it fails to perform, without any promise of performance, *do not constitute warranties of future performance*.") (emphasis added) (citation omitted); *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 534 (E.D.N.Y. 2012) ("[T]he written warranties . . . are limited to repair or replacement of warranted parts.  Such 'repair or replace,' language neither delays accrual nor creates a warranty separate and apart from the product warranty.  Instead, such warranties do nothing more than limit Plaintiff's remedy in the event of breach."); *cf. Rosen v. Spanierman*, 894 F.2d 28, 32 (2d Cir. 1990) ("Plaintiffs' argument that New York law deems a warranty explicitly to extend to the future when the nature of the product implies performance over an extended period of time [] is without merit.").[25]

In short, JPM's remedial cure-or-repurchase obligation does not constitute one of future or "continuing performance," and therefore does not save the Trust's

---

[25] Further, Appellant cites no New York cases holding that contractual language concerning the survival of representations and warranties constitutes a "continuing performance provision."  Br. 23 (emphasis removed).  Nor can that language (*see* JA-44 § 14) revive the Trust's untimely breach claim, because an "agreement purport[ing] to extend the limitations period to an indefinite date in the future in contravention of the six-year maximum provided by the statute . . . cannot be enforced," and "is ineffective to extend the limitations period."  *Bayridge Air Rights, Inc. v. Blitman Constr. Corp.*, 80 N.Y.2d 777, 779 (1992) (citing N.Y. Gen. Oblig. Law § 17-103); *see T & N PLC*, 29 F.3d at 62 (same); *cf.*, *e.g.*, *Hurlbut v. Christiano*, 405 N.Y.S.2d 871, 873 (4th Dep't 1978) (holding that contractual agreement that representations would survive closing for three years had no effect on "the applicable six-year statute of limitation") (citing CPLR § 213(2)).

untimely underlying breach claim.  *Cf.*, *e.g.*, *Hudson v. Delta Kew Holding Corp.*, 43 Misc.3d 1223(A), 2014 WL 1924324, at *8 (N.Y. Sup. Ct. Apr. 22, 2014) ("the continuing wrong or breach doctrine may only be predicated on continuing wrongful acts and *not on the continuing effects of earlier wrongful conduct*") (emphasis added) (collecting cases).

## CONCLUSION

For these reasons, the District Court's decision dismissing this action with prejudice should be affirmed.

July 21, 2014                                 Respectfully submitted,

/s/ *John G. Hutchinson*
                                             
John G. Hutchinson
Benjamin R. Nagin
Eamon P. Joyce
Colin J. Garry
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5300

*Attorneys for Defendant-Appellee*
*JPMorgan Chase Bank, N.A.*

54

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

This brief complies with the type-volume limitations of Fed. R. of App. P. 32(a)(7)(B) because this brief contains 13,977 words (as determined by the Microsoft Word 2007 word-processing program used to prepare this brief), excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. of App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word 2007 word-processing program in 14-point Times New Roman font.

/s/ *Colin J. Garry*
Colin J. Garry
*Attorney for Defendant-Appellee*
*JPMorgan Chase Bank, N.A.*

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July 2014, I electronically filed and served the foregoing brief using the CM/ECF System.

/s/ *Colin J. Garry*
Colin J. Garry
*Attorney for Defendant-Appellee*
*JPMorgan Chase Bank, N.A.*